

# EMMET, MARVIN & MARTIN, LLP

### COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

Paul T.  Weinstein
*Partner*
Tel: 212-238-3090 • 212-653-1774
Fax: 212-238-3100 • 212-653-1760
pweinstein@emmetmarvin.com

January 7, 2010

Ms. Holly S. Kaplan
United States Probation Officer
United States Probation
147 Pierrepont Street
Brooklyn, New York  11201

Hon. Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11210

> Re:  United States v. Eric Butler,
>       Criminal Docket No. 08-370 (S-4)(JBW)

Dear Ms. Kaplan and Judge Weinstein:

The defendant Eric Butler respectfully submits the following objections to the Presentence Report ("PSR") in this matter.  The defendant also has submitted to the Court a Sentencing Memorandum dated January 7, 2010, which is incorporated herein, and which also constitutes objections to the PSR.

The defendant objects to paragraph 7 of the PSR, because it primarily was the structure of an auction rate securities that had student loan collateral, and not that FFELP student loans had an indirect guaranty by the U.S. Department of Education, that resulted in the low risk of default of a student loan auction rate security, and this risk was no lower than the risk of default of an auction rate security with the same credit rating that had collateral comprised of collateralized debt obligations ("CDO"), credit linked notes ("CLN"), or any other collateral.

The defendant objects to paragraph 8 because the government has provided no evidence that one common type of CDO was secured by subprime or second mortgages, or the percentage of such mortgages in any ARS relevant to this case.

The defendant objects to paragraph 9 of the presentence report.  The structure of CLN was not clear from the trial testimony, and the structure may have been comprised of credit default swaps, rather than corporate debt.

The defendant objects to paragraph 10. The defendant worked in the Private Banking Group of Credit Suisse.

The defendant objects to paragraph 11 of the PSR. The defendant was employed in the Private Banking Group at Credit Suisse.

The defendant objects to paragraph 12. Mr. Butler sold other fixed income products besides ARS, and received significant commissions through these sales. During the time period of this case, SL-ARS were not in increasingly higher demand, and the commissions on the sales of these securities did not decrease because of such increased demand. The commissions on all ARS fluctuated based upon negotiations between Credit Suisse and the investment bank issuing the particular issue of ARS, and the commissions were set based upon the business relationships between these banks, not based upon demand, or risk of any particular security. Moreover, the demand for CDO-ARS and CLN-ARS was not lower, and these securities did not carry a higher commission for a Credit Suisse broker due to a lower demand. Nor was it easier for the defendant to purchase CDO or CLN-ARS as opposed to SL-ARS.

The defendant objects to paragraph 13. All AAA ARS were believed to be safe and liquid before August 2007. Moreover, many companies bought investment products other than ARS, that had no government component.

The defendant objects to paragraphs 14 and 15 of the PSR, which describe the charges in this case, for the reasons stated at the trial, including that the distinction between SL-ARS and other AAA-rated ARS was not material.

The defendant objects to paragraph 16, on the basis that the travel was not part of any illegal scheme.

The defendant objects to paragraph 17, which describes the charges in this case, for the reasons stated at trial, including that the distinction between SL-ARS and other AAA-rated ARS was not material. Moreover, the CDO-ARS and CLN-ARS were not more risky than SL-ARS.

The defendant objects to paragraph 18. These companies were not defrauded, and were not part of any scheme.

The defendant objects to paragraph 19 for the reasons stated at the trial, including that the email described was not intended to deceive any investor with respect to any material fact.

The defendant objects to paragraph 20. There was not a higher demand for SL-ARS in the marketplace. It did not become increasingly difficult to purchase SL-ARS. The defendant did not earn commissions he would not have otherwise earned by any transaction in this case.

The defendant objects to paragraph 21. In late 2006 and 2007 CDO-ARS and CLN-ARS at Credit Suisse provided brokers like the defendant generally with a 12.5 basis point commission, of which the defendant received 17.5%. Prior to that time, these securities and SL-ARS carried the same commission for brokers at Credit Suisse. After that time, SL-ARS, at Credit Suisse, paid between 7.5 and 12.5 basis point commission. Moreover, all new issues of ARS, including SL-ARS and any other ARS, carried a new issue sales credit.

The defendant objects to paragraph 22. This vague event, to the extent it can be determined what actions are being described, did not occur, and the defendant did not instruct any sales assistant to lie about contacts to obtain a new account.

The defendant objects to paragraph 23. The use of modestly higher historical rates in advertising for the sale of ARS was not improper, or fraud. No securities were sold based upon a misrepresentation of an interest rate. All investors received the accurate interest rate, and were informed of the accurate interest rate, on all securities they purchased.

The defendant objects to paragraph 24. Cross trading was proper, and to the extent that the conduct that is being referred to here can be determined, the conduct was not fraudulent.

The defendant objects to paragraph 25. The market for mortgage-backed CDOs, CDO-ARS and CLN-ARS did not collapse in August 2007. Before that time and since that time there occurred a significant economic downturn in virtually all economic sectors in this country, and then a substantial recovery. The auction failures in August 2007 were based upon the decisions of investment banks, including Merrill Lynch and Deutsche Bank, to unforeseeably stop their decades-long market making activity for certain ARS. The freezing of the auctions, therefore, was not based upon market conditions, but a change in investment bank policy, executed suddenly and unforeseeably. The government has not shown that all the investors attempted to liquidate their positions upon learning of the auction failures in November 2007, or more specifically, that they attempted to liquidate what they allegedly believed to be SL-ARS because of failures in non-student loan markets. Glaxo Smith Kline successfully liquidated its positions in June-July 2007 for reasons unrelated to the defendant. No "collapse of the market" as referred to in this paragraph caused any investor to take any action.

The defendant objects to paragraph 26. In August 2007 the defendant was placed on administrative leave during an internal investigation at Credit Suisse. Prior to joining Morgan Stanley and while employed there, through an attorney, and personally, the defendant informed Morgan Stanley that a significant number of emails were sent to investors that misnamed securities, referring to them as AAA-rated SL-ARS, when they were AAA-rated ARS with other collateral. The circumstances of this employment and payment of a forgivable loan are the subject of an arbitration before the Financial

Industry Regulatory Authority ("FINRA"), in an arbitration brought by Morgan Stanley against Mr. Butler.

The defendant objects to paragraphs 27, 28 and 29. The amounts in the chart in paragraph 27 appear to be the prices paid for the securities when purchased. This chart does not reflect any loss to companies for Guidelines purposes, for reasons including that: a) the chart is not a reliable estimate of the amount of any loss suffered, and no reliable estimate has been proposed by the government; b) the defendant did not intend to cause any loss; and c) no loss was reasonably foreseeable from the defendant's conduct. Many of the amounts listed in the chart relate to uncharged conduct that the government has not proved by reliable and accurate evidence. Furthermore, some investors, including certain companies here, have received compensation, and significant offers of compensation which they either have not yet accepted or have rejected, preferring to hold their securities. The securities have significant market value. They have not defaulted, do continue to pay interest, and in fact in large part appear to be paying more interest than SL-ARS, which also are illiquid due to the collapse of the ARS market. Although ARS cannot presently be sold in auctions, they can be sold in other, secondary markets. The auctions for the SL-ARS also failed completely, and all holders of these securities are in exactly the same position as the investors in this case. Corporate investors throughout the world were left holding SL-ARS when the auctions failed in February 2008. It is not accurate that the investors' positions would have been any different had they held SL-ARs; this is based upon speculation, and it is much more likely that the investors would have been in the same position as they are in now, left holding illiquid AAA-rated ARS, with a different collateral, that of student loans.

The defendant objects to paragraph 30, and to the characterization of the conduct here as a scheme. Moreover, the testimony at trial was clear that the sales assistants named in this paragraph were not knowingly part of any criminal conduct. Guideline § 3B1.1(a), and Application Note 1, together state that for a four level enhancement for being an "organizer or leader" that "involved five or more participants," each of the five participants must be "a person who is criminally responsible for the commission of the offense". The proof in this case was that the sales assistants were not "criminally responsible," and thus there was not "extensive" conduct involving "5 or more participants", and this Guideline enhancement is not applicable.

The defendant objects to paragraph 31 of the PSR, for the reasons set forth in regard to paragraphs 27-29 of the PSR.

The defendant objects to paragraphs 32 and 33, and 47-63, which set forth the Sentencing Guideline calculation. The proper calculation is as follows:

Base offense level –                 7
Guideline § 2B1.1(a)(1)

|  |  |
|---|---|
| No loss, because the defendant neither intended nor could reasonably foresee a loss. Guideline § 2B1.1, Application Notes 3(A)(i-iv) | 0 |
| The defendant was associated with a broker Guideline § 2B1.1(b)(16)(A)(ii) | 4 |

Total – 11

This results in a Guideline range of 8-14 months in Zone C of the Guidelines. This Zone permits a split sentence between imprisonment and community confinement or home detention, in combination with a term of supervised release.

Because Mr. Butler neither intended nor could foresee a loss in this matter, no loss enhancement pursuant to Guideline § 2B1.1(b)(1) is appropriate. The Presentence Report attempts no analysis of loss beyond the inaccurate statement that a loss was intended, and does not attempt to explain any relationship between Mr. Butler's sale of securities and the failure of auctions that led to the purported losses here. Nor have the purported victims in large part set forth any loss in a loss statement. Therefore, the defendant's position is that there was no loss here. The government however, in their sentencing submission, set forth an inaccurate and inflated calculation of gain pursuant to Guideline § 2B1.1, Application Note 3(B). An accurate calculation of gain from the sale of non SL-ARS, compared to what would have been earned in commissions by Mr. Butler from the sale of SL-ARS, is approximately $100,000. This "gain" would result in an increase of 8 levels pursuant to Guideline § 2B1.1(b), for an adjusted Guideline level of 19, which carries a sentence of between 30-37 months.

The defendant objects to paragraph 36 of the PSR, and denies that he forged signatures for Tzolov on letters to the Department of Homeland Security.

The defendant objects to paragraph 40 of the PSR, as the probation officer first confirmed that no statement about the offense would be made by the defendant, and then continued the interview; there was no discussion of any conditions to the interview.

The defendant objects to paragraphs 42-44 of the PSR. Neither the defendant nor counsel made statements regarding the defendant's conduct. The defendant's position on the appropriate Guideline calculation is set forth in the Guideline calculation in this letter, and in the defendant's accompanying Sentencing Memorandum.

The defendant objects to paragraph 68 of the PSR for the reasons stated at the trial in this case.

The defendant objects to paragraph 69 of the PSR. All available personal history information will be provided, and if further personal history corroborating information is requested the defendant will endeavor to supply that information as well.

The defendant objects to paragraph 72. After graduating from college in 1993, Mr. Butler resided in an apartment in Rochester, New York.

The defendant objects to paragraph 73 of the PSR. The defendant and his wife placed a $1,000,000 down payment on their apartment at 270 Broadway, #16B, and the apartment currently is rented for $10,000 per month.

The defendant objects to paragraph 74 of the PSR. In December 2009, the defendant, Mrs. Butler and their son, Ethan, moved to an address in Manhattan known to the Probation Department.

The defendant objects to paragraph 75 of the PSR. His son currently is two years old, and was born on October 2, 2007. Mr. Butler was indicted and arrested on September 3, 2008, when his son Ethan was 11 months old.

The defendant objects to paragraph 90 of the PSR, as he either no longer has an active Series 7 and Series 63 licenses, or if does, given anticipated action by the Securities and Exchange Commission, the defendant shortly will be barred from the securities industry.

The defendant objects to paragraph 93 of the PSR. The defendant received a forgivable loan when he joined Morgan Stanley. The defendant, through an attorney, and personally, disclosed the central facts underlying this case to Morgan Stanley at the time he was hired there. The issue of the defendant's hiring by Morgan Stanley and receipt of the forgivable loan is the subject of an arbitration before FINRA, as set forth in the objection to paragraph 26, above.

The defendant objects to paragraph 104 of the PSR. The apartment at 333 Las Olas Way, #1609, Ft. Lauderdale, Florida, is no longer rented.

The defendant objects to paragraph 107 of the PSR. The defendant paid the $215,000 State of New York judgment.

The defendant objects to paragraph 110 of the PSR. All of the defendant's funds have been restrained. He is unemployed and has no income. All of his rental income from 270 Broadway, Apt. 16B, is used to pay the mortgage on that property. Mr. Butler also pays approximately $2,971.00 in rent per month for his apartment. He therefore has a significant negative monthly cash flow.

The defendant objects to paragraph 111 of the PSR. No money currently is in escrow with attorneys, but has been used to pay legal fees.

The defendant objects to the Guideline calculation in paragraph 118 of the PSR, for the reasons set forth above in objections to paragraphs 47-63 of the PSR.

The defendant objects to paragraph 123 of the PSR. The entire auction rate securities market failed, and, specifically, the auctions for securities sold by Mr. Butler failed through no fault of his, in a series of events unforeseeable to him and the entire investment community. Therefore, no loss is attributable to Mr. Butler's conduct, and no restitution is appropriate.

The defendant objects to paragraph 124 of the PSR, and submits that the fine calculation set forth in the PSR is zero, because there was no loss in this case.

The defendant objects to paragraph 124 of the PSR, for the reasons stated in objections to paragraphs 27-29, 32, 33, and 47-63, and accompanying Sentencing Memorandum with exhibits, and on the basis that there was no loss in this case.

The defendant objects to paragraph 126 of the PSR. As set forth above, the appropriate Guideline range here is based upon an adjusted offense level of 11, for a fine range of between $2,000 and $20,000.

.

Very truly yours,

 /S/
Paul T. Weinstein
EMMET, MARVIN & MARTIN, LLP
120 Broadway, 32nd Floor
New York, New York 10271
(212) 238-3000

cc:     Greg D. Andres
        Daniel A. Spector, Esq.
        John Nowak, Esq.
        (Via ECF)