**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                  **MEMORANDUM & ORDER**

    - against -

                  08-CR-370 (JBW) (RER)

ERIC BUTLER,
               Defendant.
-----------------------------------------------------------X

## Introduction

On August 17, 2009, Eric Butler was convicted by a jury on all counts of a three-count superseding indictment charging him with conspiracy to commit securities fraud, securities fraud, and conspiracy to commit wire fraud. (Dkt. 248; Transcript of Criminal Cause for Trial ("Tr."). 3405–07.) The Honorable Jack B. Weinstein continued Butler's bail and, upon Butler's sentencing on January 22, 2010, referred to me any motions concerning revocation of Butler's bail pending appeal. (Tr. at 3409–22; Transcript of Sentencing at 85.) On February 22, 2010, the government moved to remand Butler pending appeal. (Dkt. 368). For the reasons which follow, the government's motion is granted.

## Background

The Court assumes familiarity with the facts of the case based on the record of proceedings before Judge Weinstein, and as stated in the Sentencing Statement of Reasons Pursuant to 18 U.S.C. § 3553(c) (2). (Tr.; Dkt. 341.)

During Butler's three-week trial, the government presented evidence pertaining to six former clients of Butler (collectively, "Clients"), and established that while working for Credit Suisse Securities (USA) LLC., (Tr. at 2022), between 2004 and August of 2007, Butler and his co-defendant Julian Tzolov promised to invest the Clients' funds in student-loan Auction Rate Securities ("ARS"), but instead invested in ARS backed by non-student-loan assets, such as

mortgages and corporate debt. (*See, e.g.*, Tr. at 438–529, 1732–1821 (Victor Matfield testifying on behalf of Rangold Resources, Ltd. (Jersey Islands, United Kingdom, West Africa)), 613–852, 860–978 (Bruce Richard Parker testifying on behalf of Potash Corporation of Saskatchewan (Canada)), 979–1090, 1098–1214 (Maria Simons testifying on behalf of Copa Airlines (Panama)), 1215–1313, 1327–1503, 1516–1603 (John Steven Turley Stout testifying on behalf of Roche International (Switzerland, Bermuda)), 1605–1714 (Sarah-Jane Chilver-Stainer testifying on behalf of GlaxoSmithKline plc (United Kingdom)), 1824–1958 (Alan Greenfield testifying on behalf of GlaxoSmithKline plc (United Kingdom)).)

The evidence showed that the Clients sought to invest in student-loan ARS because they perceived such ARS as secure and liquid investments, the underlying assets of which were guaranteed by the United States Department of Education. (*E.g.*, Tr. at 447–56, 622, 627, 629, 987, 1223–24, 1620–22, 1827.) The government established that in various communications with the Clients, Butler and Tzolov misrepresented the securities they bought on the Clients' behalf. (*E.g.*, Tr. at 1869–71, 1894–95, 2165–67, 2154–56, 2165–67, 2279, 2304–07, 2325–26, 2433–34, 2466–72, 3073–74, 3080–81.)

After pleading guilty, Tzolov testified pursuant to a cooperation agreement. (Tr. at 2143–2283, 2303–2523, 2548–2613, 2614–21 (discussing the agreement, Gov't Ex. 3500-JT-11), 2622–2766, 2782–3003, 3122–3173.) He admitted that at the time of the fraud, he and Butler understood that student-loan- and non-student loan-backed securities differed. (Tr. at 2149–54.) Tzolov also stated that he and Butler engaged in this scheme because they earned higher commissions on non-student-loan products and because student-loans ARS were not available at all times. (Tr. at 2153–54.)

2

During Tzolov's testimony, the government played piece-by-piece a tape of a telephone call between Butler, Tzolov, and Giuseppe Notarnicola, an employee of Butler's client in Switzerland, STMicroelectronics ("Notarnicola Tape"). (Tr. at 2261–83, 2303–50.) In this conversation, Notarnicola confronted Butler and Tzolov regarding the securities that they purchased on STMicroelectronics's behalf and accused them of violating various United States securities laws. (*Id.*) In his testimony, Tzolov admitted that in violation of the client's mandate to purchase student-loan ARS, he and Butler had invested $400 million of the STMicroelectronics's funds in non-student-loan securities. (*Id.*)

In August 2007, the auctions for non-student-loan securities failed, and the Clients began to learn that Butler and Tzolov purchased non-student-loan ARS on the Clients' behalf. (Tr. at 682, 1039–40.) According to the government's computation, the total principal amount of the Clients' investment in non-student-loan ARS at that time exceeded $1.12 billion. (Dkt. 320, Government Sentencing Memorandum at 15–16.)

On August 17, 2009, the jury convicted Butler on all counts. (Dkt. 248.) On January 22, 2010, Judge Weinstein sentenced Butler to five years of imprisonment and three years of supervised release, and ordered him to pay a fine of five million dollars. (Dkt. 344.) On February 9, 2010, Butler filed a Notice of Appeal. (Dkt. 365.) On February 22, 2010, the government moved to remand Butler pending appeal. (Dkt. 368). On March 5, 2010, Butler opposed the motion. (Dkt. 386.)

## Discussion

### I. Applicable Legal Standards

#### A. Statutory Presumption in Favor of Detention

The court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained, unless" it finds

> by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . . and . . . that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
> 18 U.S.C. § 3143(b) (1).

The statutory presumption favors detention pending appeal; "on all the criteria set out in subsection (b), the burden of persuasion rests on the defendant." *United States v. Randell*, 761 F.2d 122, 124–25 (2d Cir. 1985). Judge Weinstein has found by clear and convincing evidence that Butler will not pose a risk of flight or danger to the community. (Tr. at 3415.) The government does not argue that Butler's appeal is for the purpose of delay. (*See* Dkt. 368, Motion to Remand Defendant Eric Butler Pending Appeal ("Mot.") at 5; Dkt. 389, Reply ("Reply") at 1.) The only disputed issue is whether Butler's appeal has raised a "substantial question of law or fact." (*See* Dkt. 386, Defendant's Opposition to Government's Motion for Detention Pending Appeal ("Opp'n") at 7; Reply at 1.)

### B. Standard for Substantial Question of Law or Fact

In deciding whether a convicted defendant has raised a substantial question of law or fact on appeal, the district court must first determine whether such issue is "substantial," that is "a 'close' question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (citation and internal quotation marks omitted). "If a court does find that a question raised on appeal is 'substantial,' it must then consider whether that question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* (citation and internal quotation marks omitted). It is insufficient for the defendant to raise a substantial issue with respect to one of the counts; he has to show that "his appeal is likely to result in reversal [or a new trial] with respect to *all the counts* for which imprisonment was imposed." *Morison v. United States*, 486 U.S. 1306, 1306 (1988) (emphasis added).

### II. Butler Has Failed to Raise a Substantial Question of Law or Fact

Butler argues each of the following constitutes a "substantial question of law or fact": (1) evidentiary rulings pertaining to (a) exclusion of the evidence of the failure of the student-loan-ARS auctions, (b) admission of the Notarnicola Tape, (c) admission of an affidavit of Julian Heslop, a Chief Financial Officer of Butler's client, GlaxoSmithKline plc ("Glaxo Affidavit"); (2) rulings pertaining to (a) the government's characterization of certain non-student-loan ARS Butler purchased for his clients as "useless investments" and "toxic assets" and of Butler as "a con man" and (b) references to Tzolov's guilty plea; (3) venue; and (4) increase of Butler's sentence based on his "gain" pursuant to Sections 2B1.1 n. 3(B), 2B1.1 n.3(A) (I), (iv) of the United States Sentencing Guidelines. (Opp'n at 8, 11, 16, 21, 26, 29.)

## A. The Evidentiary Rulings Butler Challenges Do Not Raise a Substantial Question of Law or Fact

### 1) Evidence of the Failure of the Student-Loan-ARS Auctions

Judge Weinstein precluded as irrelevant the evidence establishing that the student-loan-ARS auctions failed after the Clients uncovered Butler's fraud. (Transcript of July 13, 2009 Proceedings ("July 13, 2009 Hr'g Tr.") at 23; Tr. at 1670–71 (striking defense counsel's question, during a cross-examination of a government's witness, regarding such failure).) Butler argues that this evidence should have been admitted because it shows that "student-loan ARS were subject to the same liquidity risks as other ARS," and thus, were not materially different. (Opp'n at 11.)

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Butler was charged with conspiracy to commit securities fraud, securities fraud, and conspiracy to commit wire fraud. (Dkt. 3, Superceding Indictment at 6, 8, 9.) The victim's loss, as Judge Weinstein pointed out during the trial, does not constitute an element of any of these crimes and is, therefore, irrelevant to the determination of the case. *See* 15 U.S.C. § 78j(b), 78ff; 18 U.S.C. §§ 371, 1343, 1349, 3551 *et seq*. (*See also* Tr. at 1617 ("There is not an element of the crime that any loss was suffered").)

The student-loan-ARS auctions failed at least five months after Butler's fraud. (July 13, 2009 Hr'g Tr. at 23.) Butler points out that evidence of subsequent events may be relevant (e.g., *United States v. Sutton*, 970 F.2d 1001, 1007 (1st Cir. 1992), where the court found relevant the defendant's subsequent "continued promotion of the investment scheme" because it showed his intent at the time of the fraud). The evidence of the ultimate failures of the student-loan-ARS

6

auctions, however, does not tend to make the allegations of Butler's fraud and conspiracy more or less probable.

In any event, the government established that student-loan and non-student-loan ARS differed materially. In an e-mail to a Client dated August 8, 2007, Butler emphasized the difference between the student-loan and non-student-loan ARS. (Tr. at 1204 ("due to the news . . . a lot of people is[sic] getting out of credit and acquiring secure papers like ARS student loans").) In August 2007, one of the Clients, Rangold Resources, Ltd., found out that Butler had invested approximately forty-nine million dollars of its funds in non-student-loan ARS, and those assets were frozen due to market collapse. (Tr. at 484–88.) At that time, when *non-* student-loan market remained illiquid, Rangold Resources, Ltd. was nevertheless able to sell its four to five million U.S. dollars worth of *student-loan* securities. (*Id.*) As such, the issue of whether the evidence of the subsequent failure of the student-loan-ARS auctions is admissible does not present "a 'close' question or one that very well could be decided the other way," and a contrary appellate decision would not result in a reversal or a new trial.

### 2) **Admission of the Notarnicola Tape**

Butler challenges admission of the portions of the Notarnicola Tape where Notarnicola confronts Butler and Tzolov regarding the fraud and refers to various provisions of United States securities laws. (Opp'n, 11–16, Ex. K; *see* Tr. at 2261–83.) Butler contends that (1) Notarnicola's accusations were prejudicial, and (2) Butler did not have an opportunity to confront Notarnicola. (Opp'n at 15.)

During the trial, the defense counsel withdrew his objections to admission of the Notarnicola Tape, or at least "portions" of it. (Tr. at 1981, 2031–33.) But in any case, Notarnicola's questions to Butler and Tzolov provided the necessary context for their responses,

which were allowed into evidence as joint admissions. *See* Fed. R. Evid. 801(d) (2), 802; *United States v. Sorrentino*, 72 F.3d 294, 298 (2d Cir. 1995) (holding that an informant's recorded statements offered to render intelligible defendant's recorded statements were not hearsay); *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990) (finding admissible recorded statements of an informant in a conversation with the defendant where such statements were presented to establish a context for the defendant's admissions); *United States v. Perez*, No. 05-CR-441 (PKL), 2005 WL 2709160, at *2–3 (S.D.N.Y. Oct. 20, 2005) (admitting an informant's recorded statements to provide context for a co-conspirator's statements). (*See also* Tr. at 1729–31.)

These statements constitute probative evidence because they place Butler's admissions in context and demonstrate the defendants' efforts to further their scheme. The value of Notarnicola's statements outweighs any prejudicial effect because these statements only repeated the facts, regarding both the alleged fraud and conspiracy, established by other evidence, such as the defendants' e-mail confirmations to STMicroelectronics and Tzolov's testimony. (*See, e.g.*, 2303–32). Any prejudicial effect was mitigated as Judge Weinstein repeatedly instructed the jury that they will "decide whether it was fraud," Notarnicola was "talking as a layman," "Mr. Notarnicola was not a witness," "[w]hat he said is not to be considered . . . as a statement of truth or evidence," and that it will be the judge who will instruct the jury on what constitutes "fraud." (Tr. at 2280, 2331, 3360.).[1]

---

[1] Butler's reliance on *United States v. Schiff*, 612 F.2d 73 (2d Cir. 1979) is misplaced. In *Schiff*, the declarant had prosecutorial background and opined, without being sworn or qualified as a testifying witness, on legal repercussions of the defendant's acts. Notarnicola, calling from Switzerland, asked the defendants specific questions concerning their misrepresentations to him and STMicroelectronics, a victim of the alleged fraud. *Compare Schiff*, 612 F.2d at 79 *with* Opp'n, Ex. K

In any case, any error in admitting this evidence would be subject to a "harmless error" review. *United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004). Under this standard a court may look at the strength of the prosecution's case (the most critical factor), the prosecutor's conduct as to the improperly admitted testimony, the importance of such testimony, and whether such testimony was cumulative. *United States v. Lombardozzi*, 491 F.3d 61, 76 (2d Cir. 2007). Where "the [allegedly inadmissible] evidence would have been 'unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record,'" the error is harmless and does not warrant a reversal. *United States v. Quiroz*, 13 F.3d 505, 513 (2d Cir. 1993) (citing *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). Here, five other Clients testified regarding Butler's alleged fraud and conspiracy, which shows that a contrary appellant ruling would not result in a reversal or a new trial.

As to Butler's Sixth-Amendment argument with respect to Notarnicola Tape, the Second Circuit has held that the right of confrontation does not apply to third-party statements offered not for their truth, but as a context for the defendant's admissions. *United States v. Murray*, 618 F.2d 892, 900 (2d Cir. 1980). This argument is, therefore, unpersuasive.

The challenge to this evidentiary ruling does not raise a substantial issue on appeal. In any event, a contrary appellate ruling would not warrant a reversal or a new trial.

### 3) Admission of the Glaxo Affidavit

Butler challenges admission of the Glaxo Affidavit on hearsay and Confrontation Clause grounds. (Opp'n at 16–20; Tr. at 2036–37.) The affidavit states that at the relevant time, the company had a policy of investing only in ARS backed by student loans, which circumstantially proved that the company would only authorize Butler to invest in student-loan ARS, and not the non-student-loan ARS Butler invested in. (Tr. at 2300.)

Arguably, Butler has waived this objection. (*Compare* Tr. at 2036–37 (initially objecting to the affidavit) *with* 2039 (government agreed to have Heslop testify by phone), 2042 (the defense counsel stated, "we'll discuss it with government counsel and we'll see if we can reach a resolution that will be sufficient for both sides"), 2116 (the defense counsel indicated that the parties "will discuss [Heslop's testimony] further"), 2286.) Judge Weinstein offered to allow Heslop to testify via teleconference at Butler's expense (Butler did not object to this condition) or by phone. (Tr. at 2116.) After discussions between the government and the defense, when the affidavit was ultimately introduced into evidence, the defense counsel affirmed, "Yes, judge, we *consent.*" (Tr. at 2286 (the Court stated "I have Court Exhibit 1 . . . from the government, indicating that counsel have agreed to [it] coming in, which is the affidavit of Julian Heslop").

Additionally, the government made it clear that it did not intend to call Heslop, and it is thus questionable whether Heslop was a "witness against" Butler within the meaning of the Sixth Amendment. (Tr. at 2037–39 (the government pointed out, "We weren't intending to call Julian Heslop").) *See* U.S. CONST. amend. VI; *United States v. Swisher*, No. 09-30016, 2009 WL 5033836, at *2 (9th Cir. Dec. 23, 2009) (holding that the defendant's "rights under the Confrontation Clause were not violated when the district court judge permitted a defense witness . . . to testify via telephone at [the defendant's] request).

Even if Butler successfully argued that he could not consent to admitting an affidavit because, *arguendo,* the other two options he was given —  testimony via videoconference at his expense or by phone —  were unconstitutional, (Opp'n at 19), this issue would be subject to "harmless error" review and would not warrant a reversal or new trial in light of other evidence. The government provided  "more than minimally sufficient" testimony and documentary evidence establishing that GlaxoSmithKline plc authorized Butler to purchase only student-loan

ARS. *See United States v. Jacobs*, 97 F.3d 275, 280–83 (8th Cir. 1996) (holding that where "the remaining evidence was still more than 'minimally sufficient' to support [the] conviction," the error of allowing a cross-examination via telephone was harmless). (Tr. at 1655, 1659–63, 1666–68 ("We specifically authorized the investment in auction rate securities backed by student loans"), 2039.) Moreover, the government presented evidence establishing that Butler's conspiracy and fraud with respect to five other victims. As such, the challenge to the Glaxo Affidavit fails to raise a "substantial" issue on appeal, and a contrary appellate decision would not warrant a reversal or a new trial.

> **B.** **Judge Weinstein's Rulings Concerning the Government's Summation**

Butler challenges the government's summation, specifically, (1) the characterization of the non-student-loan ARS Butler invested the Clients' funds in as "useless investments" and "toxic assets" and Butler as a "con man," and (2) references to Tzolov's guilty plea.

As a preliminary matter, Butler failed to object to the "useless investments" characterization, (Tr. at 3203), and to some references to Tzolov's guilty plea, including the initial reference. (Tr. at 3323; *Cf.* Tr. at 3348 (objection to the reference of Tzolov's plea)). In addition, it was not plain error to allow these statements to be made.

In pressing his argument, Butler relies on *United States v. Forlorma*, which establishes that "a series of [prosecution's] arguments to the jury that ha[ve] *no basis in the evidence*" may warrant a reversal, 94 F.3d 91, 95–96 (2d Cir. 1996) (emphasis added) (finding that the defendant was "prejudiced by the prosecutor's repeated baseless argument that a suit fitting [defendant] was in the bag with the heroin at the time of his arrest, thus reinforcing the inference of his awareness of the heroin concealed in the bag"). (Opp'n at 25.) Unlike in *Forlorma*, however, the evidence here supports the government's arguments. Butler argues that the

11

securities he purchased on his clients' behalf were not "useless investments" or "toxic assets" because these instruments paid interest and "could be expected to return principal *when they eventually matured.*" (Opp'n at 21 (emphasis added).) The Clients, however, used Butler and Tzolov's "cash-management" services, looking to invest their payroll cash or operating expenses in short-term, liquid government-guaranteed securities. (*E.g.*, Tr. at 452–53, 620, 634–35, 645–46, 974, 985–87, 1620–22.) The evidence established that non-student ARS neither met the original investment objectives of Butler's clients nor could be disposed of at the time the fraud was uncovered, and thus were of little "use" to the Clients. These assets had a "toxic" effect on the Clients' balance sheets. Likewise, the evidence of Butler's fraud and conspiracy supported the government's reference to him as a "con man" during the rebuttal.

Even if these statements were improper, they would justify reversal only if Butler can show prejudice. *See United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981). In assessing prejudice, the court can consider the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of the conviction without the improper statements. *Id.* (citation omitted). As discussed, the evidence here supported these isolated statements, which were neither repetitive nor persistent. Judge Weinstein instructed the jury to decide whether the assets were "toxic," whether Butler was a "con man," and to consider only the particular crimes charged. (Tr. at 3349.) Judge Weinstein made it clear to the jury that they can consider Tzolov's guilty only in determining his credibility, and not in determining the charges against Butler. (Tr. at 3348.) Even without the challenged statements, the evidence in the case, such as the Clients' testimony and their correspondence with Butler, supports the conviction. As such, these arguments fail to raise a substantial issue that would warrant a reversal or a new trial.

### C. Butler's Venue Challenge Does Not Raise a Substantial Question of Law or Fact

Butler challenges the jury finding that the venue was proper in the Eastern District of New York. (*See* Opp'n at 26–29.) He contends that he merely "passed through" the Eastern District when he flew from the John F. Kennedy Airport ("JFK") to visit his clients overseas. (Opp'n at 27–28.)

A criminal defendant has the right to be tried in the district where he allegedly committed the crime. U.S. CONST. amend. VI; Fed. R. Crim. P. 18. Venue for the crime of conspiracy is proper "in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators." *United States v. Smith*, 198 F.3d 377, 382 (2d Cir. 1999) (citation and internal quotation marks omitted). Venue for securities fraud is proper where "(1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue." *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) (citations omitted). "In this Circuit, venue must not only involve some activity in the situs district but also satisfy the 'substantial contacts' test of *Reed*, which requires consideration of such factors as 'the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of the [venue] for accurate factfinding.'" *United States v. Royer*, 549 F.3d 886, 895 (2d Cir. 2008) (citing *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)).

Here, the evidence has established that both Butler and Tzolov used JFK and LaGuardia airports to visit the Clients overseas in furtherance of the conspiracy and scheme to defraud these clients. (*See, e.g.*, Tr. at 446–48 (Victor Matfield testifying about meeting with Butler in London), 1623-26 (Sarah-Jane Chilver-Stainer testifying about meeting with Butler in London),

1985–2020 (Keith Jordan, a Customs and Border Protection officer testifying about the CBP records establishing Butler's departures to and arrivals from the JFK and LaGuardia Airport on his trips to Canada and the United Kingdom), 3185–87 (description of government's exhibits proving Butler's international travel to and from LaGuardia and JFK).) As such, the jury could have reasonably concluded that it was more likely than not that Butler committed the acts in the Eastern District sufficient for him to be prosecuted here.

### D. Butler Has Not Raised a Substantial Question of Law or Fact as to His Sentencing

Butler argues that the Court increased his sentence based on his "gain" improperly. (Opp'n at 29–31.) The Sentencing Guidelines provide that the court "shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss," that is a "reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. §§ 2B1.1 n. 3(B), 2B1.1 n.3(A)(i), (iv). Butler argues that there was no "foreseeable pecuniary harm" to the Clients, and thus, no "loss." (Opp'n at 29–31.)

"A victim who pays for goods or services on the fraudulent representation that they conform to certain specifications has sustained a 'loss,'" and "it is not the task of a sentencing court to second-guess the victim's judgment as to the necessity of those specifications." *United States v. Canova*, 412 F.3d 331, 352 (2d Cir. 2005) (capitalization adjusted). The Clients thus sustained a loss because they sought to acquire student-loan ARS, and Butler invested the Clients' funds securities backed by other assets. As discussed, Butler was aware of the material difference between the student-loan and non-student-loan ARS before his fraudulent scheme was uncovered. (*See, e.g.*, Tr. at 1204.) As such, this issue on appeal is neither substantial nor such that would lead to reversal or a new trial.

14

## Conclusion

Accordingly, the government's motion is granted, and Butler's bail is hereby revoked.

Unless this Memorandum & Order is stayed or reversed by Judge Weinstein, Butler is

ORDERED to surrender himself to the U.S. Marshall in thirty (30) days.


**Dated: April 27, 2010**
       **Brooklyn, New York**

*Ramon E. Reyes, Jr.*<br>**Ramon E. Reyes, Jr.**<br>**United States Magistrate Judge**