UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    - against -

ERIC BUTLER,

           Defendant.

Cr. No. 08-370 (S-4) (JBW) (RER, Jr.)

---

# MEMORANDUM ON BEHALF OF ERIC BUTLER
## SUBMITTED ON RESENTENCING

 

EMMET, MARVIN & MARTIN, LLP
Paul T. Weinstein
*Attorneys for Defendant Eric Butler*
120 Broadway, 32nd Floor
New York, New York  10271
(212) 238-3000

MOLO LAMKEN LLP
Steven F. Molo
Robert K. Kry
*Attorneys for Defendant Eric Butler*
540 Madison Avenue
New York, NY 10022
(212) 607-8160

## **TABLE OF CONTENTS**

Page

**TABLE OF CONTENTS** ........................................................................................................... i

**TABLE OF AUTHORITIES** ................................................................................................... ii

**INTRODUCTION** ..................................................................................................................... 1

I. FACTUAL BACKGROUND ................................................................................................ 3

      A.     First Sentencing ................................................................................................ 3

      B.     Transfer of Action from the Southern District of New York .................................. 3

II. A REDUCTION FROM THE COURT'S ORIGINAL SENTENCE IS APPROPRIATE BASED UPON POST-SENTENCING REHABILITATION ............................. 4

      A.     Working with Children in the Community ............................................................. 6

      B.     Mental Health Therapy ......................................................................................... 8

      C.     Eric's Care for his Son and Family ...................................................................... 9

      D.     A Reduced Sentence is Appropriate Here .......................................................... 10

**CONCLUSION** ...................................................................................................................... 14

## TABLE OF AUTHORITIES

## FEDERAL CASE LAW

*United States v. Booker,*
   543 U.S. 220 (2005) ................................................................................................ 11

*United States v. Davis,*
   2008 WL 2329290 (S.D.N.Y. June 5, 2008) ........................................................... 11

*United States v. Desilva,*
   2010 WL 532987 (E.D.N.Y. Feb. 8, 2010) .............................................................. 11

*United States v. Hawkins,*
   380 F. Supp. 2d 143 (E.D.N.Y. 2005) ..................................................................... 11

*United States v. McMannus,*
   496 F.3d 846 (8th Cir. 2007) ..................................................................................... 5

*Pepper v. United States,*
   131 S. Ct. 1229 (2011) ................................................................................ 1, 5, 10, 11

## **INTRODUCTION**

Eric Butler comes before this Court for resentencing on remand from the Second Circuit Court of Appeals, following reversal of his conviction for securities fraud on venue grounds, and the affirmance of his conviction for conspiracy to commit wire fraud and conspiracy to commit securities fraud. On resentencing, Mr. Butler will consent to jurisdiction in this District on the reversed securities fraud count, plead guilty to that count if the Court deems it necessary in light of the Second Circuit's reversal, and also plead guilty and consent to immediate sentencing on wire fraud charges recently transferred to this Court from the Southern District of New York. Those wire fraud charges are fully encompassed by the charges, facts, circumstances and Guideline calculation for the charges for which Mr. Butler was previously tried and sentenced in this Court, and, it is respectfully submitted, do not affect this Court's analysis on resentencing.

Over one and one-half years ago, on January 22, 2010, after extensive briefing and argument, this Court sentenced Mr. Butler to 5 years' imprisonment, $250,000 forfeiture, and a $5,000,000 fine. In March 2011, while the appeal was pending in this matter, the Supreme Court decided *Pepper v. United States*, 131 S. Ct. 1229, 1241-42 (2011), in which the Court held that, upon resentencing, evidence of a defendant's rehabilitation since his prior sentencing is relevant to the Court's consideration of the applicable sentencing factors and an appropriate basis for a below-guideline sentence.

As set forth below, Eric's efforts at rehabilitation since his conviction over two years ago have been extraordinary. Since that time, he has been the primary caregiver for his now four-year-old son, and has dedicated himself entirely not only to caring for his own family, but to caring for other children in his community as well. Furthermore, on his own initiative, he has successfully undertaken extensive mental health therapy to gain insight into his incorrect thinking at the time of the offense, and to work on being the best father, husband and member of

the community that he can be. In addition to the many letters submitted on Eric's behalf at the first sentencing, additional letters have been submitted, which are contained in a volume accompanying this memorandum. (In this memorandum, letters submitted on behalf of Eric as part of his resentencing will be cited as "Letters, Exh. #"). These letters describe Eric's extraordinary efforts at rehabilitation over the past two years. They include letters from parents and babysitters of children who Eric has watched and taught for the past two years, from family members and friends by the score who attest to Eric's ongoing dedication to his son, wife, extended family and community, and finally from two treating mental health providers, who attest to Eric's successful efforts to gain insight into his past errors while working in a Wall Street environment.

     Mr. Butler respectfully requests that this Court take that extraordinary post-sentencing rehabilitation into account at resentencing.

2

# I.

## FACTUAL BACKGROUND

### A. First Sentencing

A comprehensive sentencing memorandum dated January 11, 2010 was submitted on Eric's behalf in connection with his original sentencing. That memorandum detailed Eric's personal characteristics, including his upbringing in a small upstate city, his love for and dedication to his family, and his substantial record from a young age as a caring and dependable family member, friend, and member of his community. That memorandum thoroughly explained why the Section 3553(a) factors supported a sentence that would assure that Eric's family ties remained unbroken and return him to his family as quickly as possible. That memorandum, and all submissions and arguments made on behalf of Eric in connection with the original sentencing, are adopted and incorporated herein. An additional copy of that earlier memorandum, as well as the letters submitted at the first sentencing, will be delivered as a courtesy copy to the Court along with this memorandum and the additional letters submitted on resentencing.

At the first sentencing, the Court determined that the Guidelines should be calculated using the gain from the offense, which the Court calculated as $250,000. After considering the Sentencing Guidelines and Section 3553(a) factors, the Court sentenced Eric to 5 years' imprisonment, $250,000 forfeiture, and a $5 million fine.

### B. Transfer of Action from the Southern District of New York

Shortly before the trial in this matter (the "EDNY Case"), the government indicted Eric on wire fraud counts in the Southern District of New York. *United States v. Eric Butler*, 09 Cr. 685 (PGG) (the "SDNY Case"). The wire fraud scheme alleged in the SDNY case was identical to the scheme alleged in the case before this Court, and every discrete wire transmission alleged in the SDNY case was introduced at trial as part of the proof at the EDNY Case. At the first

sentencing, all of the conduct alleged in the SDNY Case was set forth in the Presentence Report, and was considered by this Court pursuant to the Section 3553(a) factors and the Sentencing Guidelines. The Court's earlier sentence, therefore, already reflected and encompassed this conduct. Accordingly, on resentencing, neither the Court's analysis of the 3553(a) factors nor the calculation pursuant to the Sentencing Guidelines is affected by the inclusion of the wire fraud charges from the SDNY case. *See* U.S.S.G. § 3D1.1, Application Note 1 ("For purposes of sentencing multiple counts of conviction, counts can be . . . contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding."); *id.* § 3D1.1(a)(1) (Closely Related Counts are grouped pursuant to § 3D1.2); *id.* § 3D1.2(d) (offenses covered by Guideline Section 2B1.1 are grouped); *id.* § 3D1.3(b) (counts grouped pursuant to Section 3D1.2(d) are treated as a single count for Guideline purposes).

There is, however, one critical new factor before this Court at resentencing. As set forth below, Eric's efforts at rehabilitation since the original sentencing have been extraordinary and successful, meriting a reduced sentence.

**II.**

**A REDUCTION FROM THE COURT'S ORIGINAL SENTENCE IS APPROPRIATE BASED UPON POST-SENTENCING REHABILITATION**

Since the original sentence in January 2010, Eric has endeavored with all his abilities to be the best father, husband, and member of the community he can possibly be, while undertaking mental health treatment to help him assess and gain insight into the behavior that led to his conviction. He has succeeded extraordinarily in both areas. His conduct demonstrates substantial post-sentencing rehabilitation, which may be considered on resentencing pursuant to Section 3553(a).

In *Pepper v. United States*, 131 S. Ct. 1229 (2011), the Supreme Court addressed this precise issue. The Court held that post-sentencing rehabilitation is an important consideration under Section 3553(a), and an appropriate basis for a below-guideline sentence. It explained:

> [E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of postsentencing rehabilitation may plainly be relevant to "the history and characteristics of the defendant." § 3553(a)(1). Such evidence may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2)—in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D); see [*United States v. McMannus*, 496 F.3d 846, 853 (8th Cir. 2007)] (Melloy, J., concurring) ("In assessing . . . deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct"). Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2).

*Id.* at 1242. The Court accordingly held:

> In light of the federal sentencing framework described above, we think it clear that ***when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range***.

*Id.* at 1241 (emphasis added).

The Supreme Court's rationale applies forcefully in Eric's case. Since his original sentencing, Eric has worked to benefit the community, and done his utmost to care for and emotionally support his four-year old son, his wife and his family. Furthermore, on his own initiative, Eric sought mental health treatment to successfully assess, understand, and come to terms with his past improper thinking and actions, recognizing that this treatment was critically important to his own future and happiness and to the security of his family.

### A.     Working with Children in the Community

Following Eric's sentencing, while on home detention and before he knew he would remain on bail pending appeal, Eric began to dedicate and change his life and his thinking in a positive way. With all of his family's funds restrained by the government, and Eric's wife, Elizabeth, required to work long hours to earn sufficient funds to maintain their rental apartment and pay for daily necessities, Eric became the full-time caregiver for their then two-year-old son. Eric began arranging regular playgroups in his home, inviting babysitters and parents into his home for activities that Eric organized. As described by Patty Hernandez, a babysitter for children who play with Eric's son:

> When Eric could no longer afford to pay for his childcare he took on that responsibility. For nearly a year he would have several of us come over to his home for play dates with his son Ethan. At that time Eric was unable to leave his home. His apartment is small but he made the most of it. The children loved going to Ethan's to play with his Dad. He made educational games fun for them and organized relay races down their long hallway. Eric made us feel at home, something many nannies do not experience from parents in our neighborhood.

Resentencing Letters ("Letters"), Exh. 28.

After the electronic monitoring condition was lifted by the Court, Eric and his son immediately became fixtures at the Lower Manhattan Community Center, where Eric has organized activities, playgroups, outings and trips for groups of children. In fact, since his conviction in this case over two years ago, Eric has spent all of his time taking care of his son. The letters submitted to the Court on resentencing, including descriptions of Eric's efforts to be a positive influence on children, attest to Eric's sincere and successful efforts to be the best father and member of the community he can possibly be, and to his understanding and rejection of the behavior that brought him before this Court.

While caring for his son was Eric's priority, other children and the broader community benefited from Eric's efforts to organize playgroups and activities at the Lower Manhattan Community Center, in parks nearby, and in his home.[1] For example, Maria Ramos wrote:

> I am the caregiver for a 5 year old boy, a 3 year old girl. I first met Eric about 18 months ago at the Downtown Community Center. You will often see Eric with his son Ethan, reading or organizing activities for several children at the center or surrounding neighborhood parks. He is a fixture in the youth community. People like Eric help the center to be a more positive influence on our youth. We need more parents and neighbors like him. When Eric arrives at the center, he is greeted by children as if he is part of their family. He is a loving, caring father and role model, not only to Ethan, but to many other children that have the benefit of being around him. At the community center, parents and "nannies" typically do not sit together. Eric on the other hand, will sit with a group of nannies as easily as with a group of parents. He treats everyone with the same respect.

Letters, Exh. 42.

Susan Munoz, writing about those same children, states:

> Eric's presence as a near-daily father figure for my 3- and 5-year old children, in particular, has been a great gift and help in getting us through a difficult divorce. My son will be heartbroken to lose him.

Letters, Exh. 40. Similarly, Peter Sorum, a parent of children living in Eric's neighborhood, writes:

> Eric has been a kind and steady friend to our family these past 3 years, not least in the role of mentor and playmate to our children. He has used the extra time at his disposal to spend time with his son Ethan and all of Ethan's friends, becoming something of a favorite uncle in the neighborhood.

Letters, Exh. 48.

Additionally, prior to his conviction, Eric and his wife employed a babysitter, Andrea Robles. Ms. Robles relates to the Court that she and her family continue to be close to Eric and

---

[1] For example, over the past year Eric has organized numerous children's group activities, including outings to the Museum of Natural History, Childrens' Museum in Manhattan, Victorian Gardens at Wollman Ring in Central Park, and many other neighborhood parks. He has chaperoned a preschool outing of his son and other children to the Big Apple Circus. Eric regularly organizes and supervises athletic activities for groups of children in parks, including baseball and soccer. During these events Eric acts not only as a parent, but as a coach as well, teaching the rules, sportsmanship, and the joy of playing a team game.

his family, and that Eric has become a mentor for Ms. Robles' two children, who are in their early 20's. Letters, Exh. 44. Ms. Robles notes that, even while he was dealing with his legal problems, Eric showed how much he cared for and was willing to help Ms. Robles's family, including by discussing school and work with them, assisting Ms. Robles in studying for her citizenship test, and making sure that Ms. Robles knew that Eric valued their relationship. *Id*.

### B. Mental Health Therapy

Shortly after his conviction, on his own initiative, Eric began mental health treatment—first with Anne Cutler, a licensed psychoanalyst, from fall 2009 through September 2010,[2] and then with Robert M. Fraum, Ph. D., a clinical psychologist, from the end of 2010 to the present. Each has presented a letter to the Court describing Eric's treatment.

With Ms. Cutler, Eric focused on coming to terms with his conviction, analyzing "how events unfolded at work," and reflecting "on his actions and how he was influenced by a stressful and ambiguous work environment." Letters, Exh. 15. Ms. Cutler found Eric's approach to be "open, thoughtful, and self-reflective." *Id*. She stresses that "Eric's primary concern throughout the treatment with me was for the welfare of his family: how to help his wife create a viable situation for herself and their son during Eric's eventual incarceration, and how to care for his young son while he could be with him and when he could not." *Id*. Ms. Cutler concluded that "[d]uring my 20 years as a psychoanalyst, I have worked with people with a great diversity of characters and personality traits. I found Eric to be a responsible person, willing to examine and learn from his mistakes. He is a loving and concerned father and husband." *Id*.

Eric continued his treatment with Dr. Fraum in late 2010. That therapy, also begun on Eric's own initiative, centered on Eric "process[ing] the behavior which led to his conviction and

---

[2] The Butlers had no health insurance covering mental health treatment at this time, but therapy was such a priority that they used a portion of the little funds that they did have to pay for treatment.

8

to take genuine responsibility for his actions." Letters, Exh. 24. In this therapy, Dr. Fraum observed that "Eric's natural over confidence, naïve sense of optimism and emotional immaturity combined with the pressure to produce in a hypomanic environment . . . clouded his thought processes and the way in which he made decisions." *Id*. Dr. Fraum explains that Eric's introspection and work with him:

> led to [Eric's] recognition of his behavior as inappropriate and fundamentally wrong. This realization eventually eroded his self respect and self worth. He became depressed, with a sense of moral, professional, and personal failure, which is separate from but in addition to financial disaster.
>
> Eric realizes that the way he made decisions at the time is not the way he would make decisions today. What allowed him to see past the falseness of his previous beliefs is his improved ability to self-examine, some newly acquired emotional tools, and emotional distance from his previous work environment which helped him put his previous actions in perspective. He has taken this time to focus on what matters: family, relationships, personal balance, and living with awareness and responsibility.

*Id*. Eric continues to work with Dr. Fraum on these issues.

### C. Eric's Care for his Son and Family

Finally, the Court has been provided with numerous letters from friends and family of Eric, sharing their observations of Eric's efforts to accept responsibility for his past actions and forge a new life, focused on taking care of his son, helping his wife maintain their family, and learning from his past errors. Virtually every letter speaks to Eric's love for and dedication to his son. Each seeks to inform the Court that Eric is the primary caregiver for his son, that they have a particularly close and special relationship, and that removal of Eric from his life would be devastating.

Those closest to Eric describe his introspection regarding his conduct, and his efforts to make his family and community his life's focus. For example, Eric's Godparents write that "[h]is dedication to his son and to maintaining the family unit during this trying time has been

9

unfaltering. Eric's goal is to continue to nurture his son, build a life long relationship with his wife, and become a contributing member of society." Letters, Exh. 1. Eric's wife recounts that Eric constantly relives the conduct that brought him before the Court, and that she knows he will spend the rest of his life trying to make amends. Letters, Exh. 6(a). Mrs. Butler stresses that she needs Eric to help raise their son. *Id.*

Additionally, Eric's mother informs the Court that Eric's identity for the past two years has become that of a father, and that caring for his son is the priority of his life. She states that Eric, through counseling by himself and with his wife, he has grown as a person, and that she is proud of the steps Eric has taken since this case began. Letters, Exh. 7.

D. **A Reduced Sentence is Appropriate Here**

Eric's extraordinary and successful efforts at post-sentencing rehabilitation are precisely what the Supreme Court envisioned in *Pepper v. United States*, 131 S. Ct. 1229 (2011), when it held that a "defendant's rehabilitation since his prior sentencing . . . [may] support a downward variance from the advisory Guidelines range." *Id.* at 1241. Eric's unflagging commitment to his son, his family, and his community are "plainly . . . relevant to 'the history and characteristics of the defendant.'" *Id.* at 1242. They confirm that Eric's mistakes on Wall Street were a singular departure from a life otherwise marked by dedication to those who rely upon him. Eric's actions over the past two years also bear strongly on "'the need for the sentence imposed' to serve the general purposes of sentencing set forth in § 3553(a)(2)—in particular, to 'afford adequate deterrence to criminal conduct' [and to] 'protect the public from further crimes of the defendant.'" *Pepper*, 131 S. Ct. at 1242. Eric's successful work with his therapists and his other actions since the original sentencing make it inconceivable that Eric poses any future threat to anyone. Finally, Eric's post-sentencing rehabilitation "critically inform[s] [this Court's] overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than

10

necessary.'" *Pepper*, 131 S. Ct. at 1242. If there was ever a case that cried out for the application of the Supreme Court's holding in *Pepper*, this is it.

Both before and after *Pepper*, this Court has relied on evidence of rehabilitation in fashioning an appropriate sentence. *See*, *e.g.*, *United States v. Ilayayev*, __ F. Supp. 2d__, 2011 WL 3440752, *33 (E.D.N.Y. Aug. 5, 2011) (Weinstein, J.) (defendant sentenced to probation for reasons including his substantial steps towards rehabilitation and "firm and intelligent" family support); *United States v. Desilva*, 2010 WL 532987, *2 (E.D.N.Y. Feb. 8, 2010) (Weinstein, J.) (defendant found guilty of bank fraud conspiracy after trial sentenced to a non-Guidelines sentence of time served and $5,166,900 restitution based in part upon a finding that defendant "ha[d] made significant efforts at rehabilitation" and was the sole support for three children); *United States v. Hawkins*, 380 F. Supp. 2d 143 (E.D.N.Y. 2005) (Weinstein, J.) (analyzing courts' consideration of rehabilitation pursuant to Section 3553(a) and the Sentencing Guidelines); *see also United States v. Davis*, 2008 WL 2329290, *5 (S.D.N.Y. June 5, 2008) (sentencing defendant to a non-Guidelines sentence of probation in recognition of his positive efforts at rehabilitation).

In *Hawkins*, this Court specifically addressed the situation of a "relatively decent, generally law-abiding citizen who errs more than once, or over some extended period, but once prosecuted, is likely to be done with crime for good." 380 F. Supp. 2d at 159. The Court found that the Sentencing Guidelines permit a downward departure in such cases, and that *United States v. Booker*, 543 U.S. 220 (2005), only expands a court's authority to consider rehabilitation in fashioning a sentence that is "sufficient, but not greater than necessary." *Id*.

By all accounts, while growing up and as an adult, Eric was unfailingly a wonderful son, brother, friend, teammate, neighbor, fellow church congregant, and much more. The letters

submitted on his behalf, both at the original sentencing and now, establish this without a doubt. Yet, after a life whose most remarkable aspects had been his care for those close to him, Eric, in his early 30s, became a Wall Street bond broker, for a period of approximately 5 years from beginning to tragic end. Indeed, the four-year period from the effective end of Eric's career in August 2007 to the present is about as long as Eric's entire Wall Street career as a broker.

Given Eric's life prior to the events in this case, it is no surprise that over the past two years he has committed all his energy to being the very best father, husband, son, friend, and member of the community he can be. It can be no surprise that he is the primary caregiver for his son, and has made his son's upbringing the focus of his life. It is consistent with Eric's entire life before becoming a bond salesman on Wall Street that he has spent the past two years caring for other children in the neighborhood, seeking therapy to understand how a person, so solid individually and from such a supportive background, could lose himself in an ARS sales environment.

It is clear from Eric's conduct over the past two years that he has made substantial steps toward rehabilitation by caring for his son and other children, mending his relationship with his wife, and seeking to understand the errant motivation and decisions he made in this case. In short, during this time, Eric has done everything he possibly could to become the person he was before these events. He poses no risk of future misconduct; he needs no specific deterrence; and no imprisonment is required to protect the public.

Eric's successful self-motivated efforts at rehabilitation are precisely the sort of steps "that lead to the result the law seeks under Section 3553: a law-abiding member of society." *Hawkins*, 380 F. Supp. 2d at 160. Given Eric's devotion to rehabilitation and demonstrated commitment over the past two years to be a productive member of the community, it is

respectfully requested that community service be substituted for a portion of any sentence of imprisonment imposed upon resentencing. It further is respectfully submitted that Eric's successful rehabilitative efforts render any sentence that threatens to permanently damage his bond with his child and his wife greater than necessary to satisfy the purposes of Section 3553(a), and that the Court should impose a sentence that permits those bonds to be maintained, and to thrive.

## **CONCLUSION**

For the reasons stated in this Sentencing Memorandum, and upon the submissions and arguments made on behalf of Eric Butler at the initial sentencing, it is respectfully requested that any sentence imposed here take into account Eric's substantial efforts at rehabilitation, including his successful effort to be of service to the community, and his extraordinarily close relationship with his son and his family, and that any sentence imposed not irreparably damage these relationships. To this end, it is respectfully requested that community service be substituted for a portion of any incarceratory sentence imposed.

Dated: August 19, 2011
      New York, New York

                                               /S/
                                  EMMET, MARVIN & MARTIN, LLP
                                  Paul T. Weinstein
                                  *Attorneys for Defendant Eric Butler*
                                  120 Broadway, 32nd Floor
                                  New York, New York 10271
                                  (212) 238-3000


                                  MOLO LAMKEN LLP
                                  Steven F. Molo
                                  Robert K. Kry
                                  *Attorneys for Defendant Eric Butler*
                                  540 Madison Avenue
                                  New York, NY 10022
                                  (212) 607-8160